UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ALEXANDER MENDEZ AND CLAIRE MENDEZ<br>      Plaintiff,<br><br>vs.<br><br>VILLAGE OF TINLEY PARK, a Municipal Corporation, JOSEPH VEGA, individually as a police officer in the Police Department of theVillage of Tinley Park,<br>      Defendants. | )<br>)<br>)<br>)<br>)<br>) No. 07-cv-06498<br>)<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS**

NOW COME the plaintiffs, ALEXANDER MENDEZ and CLAIRE MENDEZ, by and through their attorneys, THE MILLER LAW GROUP, LLC and for their response to defendants' Rule 12 (b)(6) motion to dismiss the complaint, state as follows:

## I. INTRODUCTION

This case involves an incident where an on-duty police officer entered the business owned by Alexander and Claire Mendez and shot Alexander Mendez with two metal pronged tasers, causing him significant injuries. Defendants have filed a motion to dismiss based entirely on the mischaracterization that this case involves an accident. Defendants argue that, as a result, multiple counts of the complaint must be dismissed. Nonetheless, despite these efforts to simply characterize the incident as mere negligence, this case as alleged in plaintiffs' complaint involves acts of willful, intentional,

purposeful, violent and outrageous misconduct. For these reasons and those that follow, defendants' motion to dismiss must be denied.

## II. FACTS

Plaintiffs Alexander ("Alexander") and Claire ("Claire") Mendez own a restaurant named Guardi's Pizza in Tinley Park, Illinois. (Plaintiff's complaint at ¶8, attached hereto as Exhibit A). On or about July 15, 2007 around 9:00 p.m. Officer Joseph Vega walked into plaintiffs' restaurant, sat down at the counter and ordered pasta salad. *Id.* at ¶9. Alexander went into the walk-in-cooler to retrieve Officer Vega's pasta salad. *Id.* While Alexander was in the cooler, Officer Vega turned to Claire and asked her if she wanted to see him [Officer Vega] scare Alexander. *Id.* Claire did not want to see Officer Vega scare her husband and replied "No!"

With complete disregard for Claire's request and knowing that Alexander had a fear of guns, Officer Vega took out his Taser gun and pointed it directed at Alexander's head. *Id.* at ¶10. The gun discharged and the heavy metal Taser prongs struck Alex and became embedded in his right temple and collarbone. The force of the impact caused Alexander to go into convulsions and later unconsciousness and bite off part of his tongue. *Id.* at ¶11. It is unclear why Officer Vega pulled the trigger.

Officer Vega then immediately pulled out the Taser prongs from Alexander's skull and collarbone, which caused him to bleed profusely. Officer Vega then called for backup and a supervisor and two detectives from the Village of Tinley Park arrived on scene. The Taser prongs, Alexander's bloody glasses, the bloody towels and the restaurant video surveillance equipment were confiscated by the police.[1] *Id.* at ¶ 12.

---

[1] Defendants have not returned these items despite numerous requests from plaintiffs. The content of the tapes remains unknown.

Alexander was transported to the hospital and has continued to treat for ongoing medical and psychological injuries. *Id.* at 13.

On November 15, 2007 plaintiffs filed a seven count complaint against the Village of Tinley Park and Officer Joseph Vega for injuries sustained as a result of the June 15, 2007 incident.

### III. ARGUMENT

Defendants have filed a motion to dismiss based on four fundamental arguments; (1) defendants claim that this incident is the result of mere negligence and thus the 5th and 14th Amendments under §1983 do not apply; (2) defendants assert that Counts I, II and III are duplicative; (3) plaintiffs' complaint fails to state a cause of action for civil conspiracy under §1985; and (4) plaintiffs' complaint fails to state a cause of action for Claire Mendez under intentional infliction of emotional distress and *Monell*. As discussed below, none of these arguments have merit.

> A. **SINCE PLAINTIFFS' COMPLAINT ALLEGES AND THIS CASE INVOLVES NUMEROUS INTENTIONAL AND WILLFUL ACTS OF MISCONDUCT BY OFFICER VEGA, THE COMPLAINT STATES A CAUSE OF ACTION FOR VIOLATIONS OF THE 5TH AND 14TH AMENDMENTS AND §1983**

Plaintiffs do not disagree with defendants' argument that mere negligence is insufficient to state a claim for a deprivation of due process under the Civil Rights Act. *Daniels v. Williams*, 474 U.S. 327, 328 (1986). However, as the following discussion illustrates, this is not a case involving mere negligence. Rather, this case involves

3

allegations of intentional, willful and wanton conduct by Officer Vega that is a complete abuse of his power as a governmental official.[2]

More importantly, for purposes of the motion to dismiss, the plaintiffs' complaint does not plead or even suggest that Officer Vega's actions were negligent. Indeed, the profound injuries suffered by Alexander were not the result of an accident. For instance, Officer Vega did not trip and accidentally shoot Alexander. Officer Vega was not for example attempting to shoot someone else with the Taser prongs and instead inadvertently struck Alexander. Rather, as the complaint very clearly explains, each of the events giving rise to the Taser shooting was an intentional action by Officer Vega and abuse of his governmental power.

### 1. Due Process Clause Of The 5th And 14th Amendments

The Due Process Clause of 5th and 14th Amendments to the Constitution of the United States protects its citizens from the deprivation of life, liberty or property without due process of law. Among these Constitutional protections is the right and privilege to be free from physical abuse, coercion and intimidation. The Due Process Clause, as found within the 5th and 14th Amendments, was intended to secure an individual from an abuse of power by government officials. *Daniels v. Williams*, 474 U.S. 327 (1985).

### 2. §1983 Of The Civil Rights Act

Title 42 of the United States Code Section 1983, also known as The Civil Rights Act of 1983, provides that:

> "Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights,

---

[2] Counts IV, V and VI are not subject to defendants' motion to dismiss. Rather defendants simply ask the Court to refuse to exercise jurisdiction over those counts if Counts I-III are dismissed. Therefore, plaintiffs will not address those counts in their response to the motion to dismiss.

privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."
42 U.S.C. §1983.

In order to sustain a cause of action under the Civil Rights Act of 1983, the allegations in plaintiffs' complaint must show (1) that the defendant(s) acted under color of state or local authority; (2) that they subjected plaintiff(s) to the deprivation of rights, privileges or immunities secured to them by the Constitution and laws of the United States, or caused them to be subjected to such deprivation; and (3) that the plaintiff(s) were injured thereby. 15 Am Jur 2d Police Misconduct §41.

### 3. Plaintiffs' Complaint Adequately Pleads Facts Alleging Violations of the 5th And 14th Amendments, And Violations Of §1983

Here, plaintiffs have more than adequately pled the requisite elements to sustain a cause of action for violations of the 5th and 14th Amendments and §1983. As the following discussion illustrates, the injuries suffered by Alexander and Claire Mendez were the result of intentional misconduct and not the result of an accident or mere negligence.

#### a. *Officer Vega's Conduct Was Willful, Wanton, Purposeful And Intentional*

Plaintiffs' complaint contains numerous allegations of intentional, purposeful, willful and wanton conduct by Officer Vega. It is unfathomable how defendants can argue that Officer Vega's conduct amounted to mere negligence. On the night of the incident, Officer Vega made his intentions clear when he announced to Claire that he intended to scare her husband. He knew Alexander had a fear of guns.

The evidence will show that Officer Vega voluntarily left his seat at the counter of plaintiffs' restaurant and walked to the back of the store, an area not open to public. Officer Vega walked over to the area near the walk-in-cooler where Alexander was

retrieving pasta salad. He waited for Alexander to come out. His plan to scare Alexander and his decision to enter the area near the walk-in cooler was not accidental but rather premeditated and intentional. When Alexander exited the walk-in-cooler, this on duty police officer then intentionally pointed his Taser gun, which he as a governmental official has the privilege of carrying, directly at Alexander's head.

In other words, Officer Vega reached into his holster, an intentional act. Officer Vega gripped his Taser gun, an intentional act. Officer Vega lifted his gun from the holster, another intentional act. He then intentionally, willfully and purposefully pointed the Taser gun directly at Alexander. These intentional acts by an on-duty police officer were committed in front of and were witnessed by Alexander's wife Claire.

What happened next was that Officer Vega pulled the trigger. Remarkably, defendants actually suggest at page 3 of their brief that Officer Vega was playing a "prank" or a "joke" on Alexander when he shot Alexander with his Taser gun. It is fairly certain that neither Alexander nor his wife Claire were laughing when thousands of volts of electricity were absorbed by Alexander, caused him to go into convulsions, bite off part of his tongue and lose consciousness.[3] The evidence will also show that Alexander suffers from memory loss and lapses, slurred speech, headaches, bouts of depression and has difficulty sleeping, eating and walking as a direct and proximate result of the incident. He also has scars that are easily recognizable on both his head and collar, certainly not a laughing matter.

---

[3] The exact electrical voltage absorbed by Mr. Mendez will be the subject of expert testimony. A recent Chicago Sun-Times article titled "AMP'D UP, 'More Tasers For Cops'," attached hereto as Exhibit B, explains that the Taser prongs deliver "an immobilizing 50,000-volt shock." Plaintiffs intend to introduce evidence at trial regarding the mechanism of a taser and the resulting neurological impact.

### b. *The Complaint Does Not Allege Facts That The Injuries Were The Result Of A Joke, Prank Or Accident*

This was not "an unfortunate accident," "joke" or "prank" as defendants surmise. (Defendants' Motion to Dismiss at page 3, ¶1). Defendants go as far as saying "while this incident may be unfortunate, it is simply not an abuse of governmental power by Vega that is sufficient to shock the conscience." *Id.* What shocks the conscience is classifying this horrific incident as a "prank" or "joke." Attached hereto as Exhibit C is an article from Classically Liberal titled "Cops are Such Funny People. A Real Laugh Riot" authored by an individual who did not share in defendants' caricature of the events.

Plaintiffs' have no idea why Officer Vega pulled the trigger. This will be for Officer Vega to explain under oath. Moreover, defendants' misclassification of the events as an accident will be the subject of discovery. Nonetheless, nowhere in the complaint do plaintiffs' allege, imply or insinuate that the act of pulling the trigger was accidental. For defendants to ask the court to simply assume that Officer Vega pulled the trigger as part of prank and dismiss various counts of the complaint as a result shows the same type of arrogance demonstrated by Officer Vega that night.

Certainly if Officer Vega and Tinley Park want to adopt the position that the incident was a joke gone awry, they may assert these and other defenses as part of their affirmative defenses. Defendants can explain to the jury how this on-duty officer was simply joking around when he pointed a highly dangerous weapon, entrusted to him by the Village of Tinley Park, at an innocent man in his own place of business. Because plaintiffs have sufficiently pled that Officer Vega's actions involved intentional, willful

7

and wanton conduct and involved an abuse of governmental power, defendants' motion to dismiss must be denied.[4]

### B. COUNTS II AND III ARE NOT DUPLICATIVE OF EACH OTHER OR COUNT I BECAUSE EACH ALLEGES A SEPARATE AND INDEPENDENT CAUSE OF ACTION

#### 1. Count II Alleges A Violation Against Tinley Park Under The Due Process Clause Of The 5th And 14th Amendments

Count II is brought against the Village of Tinley Park and alleges a violation of Alexander's civil liberties protected by the Due Process Clause of the 5th and 14th Amendments. In addition, Count II alleges intentional misconduct against the Village of Tinley Park for failure to instruct, supervise, control or discipline Vega.

As alleged in the complaint, the intentional conduct of Tinley Park subjected Alexander of a deprivation of his life, liberty and property. Specifically, Tinley Park subjected Alexander to physical abuse, coercion and intimidation. Upon information and belief, the Village of Tinley Park had knowledge of prior acts of misconduct by Officer Vega but failed to take any measures to prevent him from committing future harm.

While the allegations contained in this count are somewhat similar to those contained in Count III, Count II is based on a violation of the Due Process Clause contained in the 5th and 14th Amendments. Count III does not allege a violation of the 5th or 14th Amendments but rather is brought under a violation of *Monell* and §1983

---

[4] In the event the Court determines that Counts I, II and/or III of plaintiffs' complaint fails to state a claim under §1983 and/or fails to allege intentional conduct by Officer Vega, plaintiffs respectfully request leave of court to amend their complaint.

2. **Count III Alleges A Violation Against Tinley Park Under *Monell* For Failure To Adequately Train Its Officers Pursuant To A Custom And Practice**

Pursuant to *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 691 (1978), a municipal defendant can be held liable under §1983 if a municipal policy or custom caused the constitutional violation.

Plaintiffs who allege a §1983 violation against a municipality are required to comply only with the conventional standards of notice pleading; they are not required to meet any heightened pleading standard. *Didzerekis v. Steward*, 41 F. Supp. 2d 840, 843-44, quoting *Gibson v. Chicago,* 910 F. 2d 1510, 1520 (7th Cir. 1990). The standard for pleading requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." *Id.* quoting Federal Rule of Civil Procedure 8 (a)(2). A plaintiff is not required "to specify particular legal theories in a complaint, so long as the facts alleged give adequate notice to the defendant of the basis of the suit." *Id.* quoting *Wudtke v. Davel*, 128 F. 3d. 1057, 1061 (7th Cir. 1997).

Contrary to defendants' assertions, plaintiffs have adequately pled and identified Tinley Park's widespread practice and custom of abusing its citizens in a manner similar to plaintiffs. In particular, as alleged in the complaint, Tinley Park has a "custom or practice" of directly encouraging its officers to engage in conduct similar to that of Officer Vega by failing to adequately train, supervise or control its officers. (Complaint ¶16) In addition and as part of its "custom or practice," Tinley Park maintains a code of silence whereby it fails to report misconduct committed by its officers despite knowledge of such misconduct. *Id.* at ¶16 (e). These allegations go beyond the notice pleading requirement necessary to state a claim under *Monell* and §1983.

Defendants maintain that Claire Mendez must be dismissed from the complaint because there are no allegations that her constitutional rights were violated. Count III is based on a §1983 Civil Rights Violation, which guarantees Claire certain constitutional rights and privileges. All paragraphs contained in Count III are based on and allege that defendants' custom and practices have violated Claire's constitutional rights to be free from physical abuse, coercion and intimidation.

Upon information and belife, the Village of Tinley Park and Officer Vega had knowledge of prior incidents where Taser guns prematurely discharged. Rather than taking corrective action to remedy the problems and prevent further injuries, defendants adhered to their custom and practice of silence. In addition and upon information and belief, Tinley Park had knowledge of prior incidents of misconduct by Officer Vega; yet failed to punish him or take affirmative measures to remedy the patterns of abuse.

### 3. The Counts Are Not Duplicative Because Count I Could Stand Alone Based On Allegations Of Civil Conspiracy

In addition to alleging a violation of the 5th and 14th Amendments, Count I alleges a civil conspiracy under §1985 of the United States Code against Officer Vega and the Village of Tinley Park. The §1985 conspiracy claim is not alleged in Counts II or III.

To state a claim for civil conspiracy under §1985 (3), a plaintiff must allege (1) the existence of a conspiracy; (2) a purpose to depriveaperson or class of persons of the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) injury to person or property or a deprivation of a right or privilege granted to a U.S. Citizen. *Green v. Benden,* 281 F. 3d. 661, 665 (7th Cir. 2002).

As alleged and implied in Count I, a conspiratorial agreement existed between Officer Vega and the Village of Tinley Park to deprive plaintiff of his rights, privileges

and immunities secured to him by the 5th and 14th Amendments. After Alexander was struck by Officer Vega's Taser gun, Officer Vega called for back-up. (Complaint at ¶12). Shortly thereafter, a supervisor and two detectives from the Village of Tinley Park arrived on scene. *Id.* Officer Vega and the Village of Tinley Park did conspire and agree to impede, hinder, obstruct justice and deprive Alexander of his rights, privileges and immunities secured by the 5th and 14th Amendments when they confiscated those items, which included his personal property. (Complaint at ¶ 12, 15-16). Alexander had committed no crime. Quite the contrary, he was a victim of one. Yet, the Village of Tinley Park removed any and all evidence implicating its police officer. Since plaintiff adequately states a civil conspiracy claim under §1985, defendants' motion to dismiss must be denied.[5]

### C. SINCE CLAIRE MENDEZ WAS IN THE "ZONE OF DANGER" AND EXPERIENCED REASONABLE FEAR FOR HER OWN SAFETY AS A RESULT OF OFFICER VEGA'S ACTIONS, DEFENDANTS' MOTION TO DISMISS COUNT VII MUST BE DENIED

To sustain an action for intentional infliction of emotional distress, a plaintiff must show that (1) defendant's conduct was extreme and outrageous; (2) that the defendant intended or knew that the conduct would inflict severe emotional distress; and (3) that the conduct did in fact cause such distress. *Lopachich v. Falk II*, 5 F. 3d 210, 212 (7th Cir. 1993). The degree of power or authority which a defendant has over a plaintiff can impact upon whether that defendant's conduct is outrageous. *McGrath v. Fahey*, 126 Ill. 2d 78, 86 (1989). "The more control defendant has over the plaintiff, the more likely that defendant's conduct will be deemed outrageous, particularly when the alleged

---

[5] In the event the Court determines that the elements of a civil conspiracy under §1985 are not met or adequately pled, plaintiff respectfully request leave of court to amend his pleading and cure any defects.

11

conduct involves either a veiled or explicit threat to exercise such authority or power to plaintiff's detriment." *Id.*

Another factor Courts consider in determining whether a plaintiff has satisfied a cause of action under intentional infliction of emotional distress is defendant's awareness of the plaintiff's susceptibility to physical or mental stress. *Lopachich v. Falk*, at 212.

Here, Officer Vega's conduct was extreme and outrageous and went beyond all possible bounds of decency. This is unequivocal. Indeed, Officer Vega is a police officer for the Village of Tinley Park. As a law enforcer, he is in a superior position over plaintiffs. In addition, Officer Vega had personal knowledge that Alexander had a fear of guns. This is evidenced by his statement to Claire, "Do you want to see me scare Alex?" just before he pulled out his Taser gun and pointed it at Alexander.

Officer Vega demonstrated such a reckless disregard for plaintiffs' safety when he (1) entered *their* place of business; (2) ordered food from *their* restaurant; (3) asked Claire if she wanted to see him scare her husband; (4) completely disregarded Claire's request that she did *not* want to see her husband scared; (5) pulled out his Taser gun; and (6) pointed it directly at Alexander, knowing at all times that Alexander was fearful of guns.

In reasonable fear of her own safety and of her husband's, Claire watched as Officer Vega's gun discharged, sending the metal taser prongs into her husband's skull and collarbone. Claire watched as her husband's body fell to the ground convulsing and bleeding profusely. She had no way of knowing whether he would survive.

Whether Officer Vega intended to scare Claire and whether his conduct was directed at Claire is not at issue. Pursuant to the "zone of physical danger rule" a

plaintiff, as a bystander or direct victim, may state a cause of action for intentional infliction of emotional distress when they were in such proximity to the accident that there was a high risk of physical impact so as to cause her reasonable fear for her own safety. *Koeller v. Cook County*, 180 Ill. App. 3d 425, 433 (1st Dist. 1989).

In addition, plaintiff must show a physical injury or illness resulting from the emotional distress. *Id.* As a direct result of Officer Vega's actions, Claire Mendez suffered serious injuries, which have required the medical attention of a psychologist. The evidence will show she has suffered profound weight loss. The evidence will also show that due to the medical and psychological injuries suffered by Alexander, Claire has been required to take on the business chores alone. Therefore, defendants' motion to dismiss Count VII (mislabeled as XII), must be denied.

### E. MOTION TO DISMISS STANDARD

A motion to dismiss tests the legal sufficiency of the complaint and not the merits of the suit. *Didzerekis v. Steward*, 41 F. Supp. 2d 840, 843-44, quoting *Gibson v. Chicago,* 910 F. 2d 1510, 1520 (7th Cir. 1990). A plaintiff fails to state a claim upon which relief may be granted "only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Id.* at 844. In analyzing the sufficiency of plaintiff's complaint, the Court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the Plaintiff. *Id.* These factual allegations may be contained in the complaint or, under some circumstances, in plaintiff's reply brief in opposition to a motion. *Id.*

Plaintiffs have adequately pled facts alleging a cause of action under the Due Process Clauses of the 5th and 14th Amendments, §1983 and §1985 of the United States

Code, assault, battery, willful and wanton and intentional infliction of emotional distress. As discussed above, the evidence will not only support plaintiffs' allegations but will in all likelihood place plaintiffs in a position for summary judgment. Accordingly, defendants' motion to dismiss Counts I, II, III and VII (mislabeled as XII) against Claire Mendez must be dismissed.

## IV. CONCLUSION

Because plaintiffs' complaint alleges and is based upon intentional conduct against defendants and meets all the pleading requirements necessary to state a cause of action for a violation of §1983, §1985 and intentional infliction of emotional distress, defendants' motion to dismiss must be denied.

WHEREFORE, plaintiffs ALEXANDER MENDEZ and CLAIRE MENDEZ respectfully request that this Honorable Court enter the following:

1) Denying defendants' motion to dismiss Counts I, II and III of plaintiffs' complaint, or in the alternative granting them leave to amend their complaint to cure any defects;

2) Denying defendants' motion to dismiss plaintiff Claire Mendez from Count VII (mislabeled as XII), or in the alternative, granting them leave to amend their complaint to cure any defects;

3) Striking any reference to any alleged violation of 18 U.S.C. §285;

4) Striking their prayer for punitive damages solely against defendant the Village of Tinley Park in Counts I-VI and VII (mislabeled as XII);

5) Granting plaintiffs leave to amend their prayers for relief in Counts I-VII to include a prayer for attorney fees pursuant to the Civil Rights Attorney's Fees Awards Act of 1976;

6) Granting plaintiffs any further relief this Court deems just and proper.

Respectfully submitted,
**The Miller Law Group, LLC**

**/s/Andrew K. Miller**
Andrew K. Miller
Jennifer A. Kunze
**THE MILLER LAW GROUP, LLC**
15 Spinning Wheel Road
Suite 210
Hinsdale, Illinois 60521
Telephone: (630) 655-0692
Facsimile: (630) 654-4894

## CERTIFICATE OF SERVICE

  The undersigned, an attorney, certifies under penalties of perjury that on this 5th day of February, 2008, copies of Plaintiffs' Response to the Motion to Dismiss were electronically filed with the Clerk of the Northern District of Illinois, Eastern Division, using the Electronic Filing System, which will send notification of such to all counsel of record.

              /s/: Jennifer A. Kunze
              Attorney for Plaintiffs
              **The Miller Law Group, LLC**
              15 Spinning Wheel Road
              Suite 210
              Hinsdale, Illinois 60521
              Telephone: (630) 655-0692
              Facsimile: (630) 654-4894